UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSHUA H.,[1]

    **Plaintiff,**

v().

**FRANK BISIGNANO,**[2]
**Commissioner of Social Security,**

    **Defendant.**

Case No. 2:23-cv-3431
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Joshua H. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

I.       PROCEDURAL HISTORY

On August 10, 2020, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since June 1, 2019. R. 68, 77, 86, 95, 218–60. The applications were denied initially and upon reconsideration. R. 109–16, 125–32. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 133–34. ALJ Ricardy Damille held a hearing on March 15, 2022, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 40–67. In a decision dated April 29, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from June 1, 2019, Plaintiff's alleged disability onset date, through the date of that decision. R. 16–26. That decision became final when the Appeals Council declined review on May 16, 2023. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 26, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On January 31, 2025, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

II.       LEGAL STANDARD

    A.     **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

B.     **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.     ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 30 years old on June 1, 2019, his alleged disability onset date. R. 25. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 19.

At step two, the ALJ found that Plaintiff's depression, bipolar disorder, and anxiety were severe impairments. *Id*. The ALJ also found that Plaintiff's history of HIV infection and asthma were not severe impairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19–20.

At step four, the ALJ found that Plaintiff had the RFC to perform work at all exertional levels subject to various non-exertional limitations. R. 20–25. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a street sweeper operator, garbage collector, and fence erector. R. 25.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as a stock checker, a kitchen helper, and a cleaner–existed

in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 25–26. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 1, 2019, his alleged disability onset date, through the date of the decision. R. 26.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 5; *Plaintiff's Reply Brief*, ECF No. 8. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 7.

### IV. SUMMARY OF RELEVANT MEDICAL EVIDENCE

On April 6, 2020, Komal Shah, M.D., Plaintiff's treating psychiatrist, completed a five-page, check-the-box, and fill-in-the-blank form entitled, "Psychiatric / Psychological Impairment Questionnaire." R. 433–37. Dr. Shah treated Plaintiff on a monthly basis beginning December 18, 2019, and most recently on March 4, 2020. R. 433. She diagnosed moderate bipolar I disorder, current episode depressed, and moderate cannabis use disorder (history). *Id*. Dr. Shah identified Plaintiff's history of physical abuse and neglect in childhood and having spent a significant portion of his childhood in foster care as psychosocial factors. *Id*. Plaintiff's medications were Seroquel and Trileptal. *Id*. Dr. Shah noted that Plaintiff required hospitalization / inpatient treatment for his symptoms in May 2018 for "suicidal thinking[.]" *Id*. Dr. Shah also affirmed that Plaintiff's course of treatment was consistent with the symptoms and limitations described in the questionnaire. *Id*. According to Dr. Shah, Plaintiff's diagnoses and

limitations were expected to last at least twelve months. R. 436.[4] Dr. Shah identified the following signs and symptoms in support of her diagnoses and assessment: depressed mood; persistent or generalized anxiety; irritable and labile affect; hostility or irritability; manic syndrome; past suicide attempt; difficulty thinking or concentrating; easy distractibility; flight of ideas; intrusive recollections of a traumatic experience; persistent irrational fears; anhedonia/pervasive loss of interests; decreased energy; deeply ingrained, maladaptive patterns of behavior; impulsive or damaging behavior; intense and unstable interpersonal relationships; motor tension; psychomotor abnormalities, including pressured speech; social withdrawal or isolation; and inability to fall asleep, stay asleep. *Id*. Dr. Shah identified Plaintiff's sleep disturbance and affective lability as the most frequent and/or severe signs or symptoms. R. 434. Plaintiff did not have a low I.Q. or reduced intellectual functioning and his psychiatric conditions did not exacerbate pain or other physical symptoms. *Id*. According to Dr. Shah, Plaintiff's "[j]ob loss has resulted from symptoms[.]" *Id*. Plaintiff had good days and bad days. *Id*. Dr. Shah considered Plaintiff's limitations in his ability to perform mental activities in a competitive environment on a sustained and ongoing basis, using the following scale: none (symptoms do not interfere with ability); mild (symptoms rarely interfere with ability); moderate (symptoms occasionally—up to one-third of an 8-hour workday—interfere with ability); moderate-to-marked (symptoms frequently—one-third to two-thirds of an 8-hour workday—interfere with ability); and marked (symptoms constantly—more than two-thirds of an 8-hour workday—interfere with ability). R. 435. Under the category understanding and memory, Dr. Shah opined that Plaintiff was moderately limited in his ability to remember locations and work-like procedures and to understand and remember one-to-two step instructions and moderately-to-

---

[4] The opinion's pages were filed out of order in the administrative record.

markedly limited in his ability to understand and remember detailed instructions. *Id*. In the category of concentration and persistence, Dr. Shah opined that Plaintiff had no-to-mild limitations in his ability to carry out simple, one-to-two step instructions; was moderately limited in his ability to carry out detailed instructions; was moderately-to-markedly limited in his ability to make simple work-related decisions; and was markedly limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule and consistently be punctual, sustain ordinary routine without supervision, work in coordination with or near others without being distracted by them, complete a workday without interruptions from psychological symptoms, and perform at a consistent pace without rest periods of unreasonable length or frequency. *Id*. As to social interactions, Dr. Shah opined that Plaintiff was moderately-to-markedly limited in his ability to get along with coworkers or peers without distracting them and to adhere to basic standards of neatness; and was markedly limited in his ability to interact appropriately with the public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and maintain socially appropriate behavior. *Id*. In evaluating Plaintiff's adaptation abilities, Dr. Shah opined that Plaintiff had no-to-mild limitation in his ability to be aware of hazards and to take appropriate precautions; was moderately-to-markedly limited in his ability to travel to unfamiliar places or use public transportation and to make plans independently; and was markedly limited in his ability to respond appropriately to workplace changes and to set realistic goals. *Id*. Plaintiff was likely to be absent from work as a result of his impairments or treatment more than three times per month. R. 437. Dr. Shah further opined that Plaintiff's symptoms and related limitations had existed since June 1, 2019. *Id*. Finally, Dr. Shah affirmed that Plaintiff's symptoms and functional limitations detailed in the questionnaire were reasonably consistent with the clinical and/or

objective findings discussed in the report. *Id*.

## V. DISCUSSION

Plaintiff challenges the ALJ's consideration of multiple medical opinions including, *inter alia*, Dr. Shah's opinion. *Plaintiff's Brief*, ECF No. 5, pp. 13–23; *Plaintiff's Reply Brief*, ECF No. 8, pp. 1–4. For the reasons that follow, the Court agrees that substantial evidence does not support the ALJ's consideration of this opinion.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[5] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the

---

[5] As previously noted, Plaintiff's claim was filed on August 10, 2020.

11

Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The applicable regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his or her "consideration of medical opinions and prior administrative medical findings" and articulate in the

"determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

At step four of the sequential evaluation process in this case, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: "The claimant is able to understand, remember and carry out simple instructions. He is restricted to work involving occasional workplace changes and occasional decision making. He can have occasional interaction with supervisors, coworkers and the public." R. 20. In making this finding, the ALJ characterized Dr. Shah's opinion as not persuasive, reasoning as follows:

> On April 6, 2020, Dr. Shah completed a psychiatric impairment questionnaire and opined mostly marked limitations in concentration and adaptation and that the claimant would be absent more than three times per month (Exhibit 4F). This opinion is not persuasive as it is not supported by the medical evidence. As previously noted, record from the George J. Otlowski Sr. Center, which included treatment notes from this practitioner, noted symptom response to medication treatment, unremarkable mental examination findings and no evidence of psychotic symptoms (Exhibits 5F, 8F, 18F). Additionally, the claimant's activities of daily living are not significantly impacted. He drives, shops and shares in household chores (Exhibit 3E, 13F and testimony).

R. 24.

Plaintiff challenges this evaluation, arguing, *inter alia*, that the ALJ "completely disregards the supportive explanations" included in Dr. Shah's opinion. *Plaintiff's Brief*, ECF No. 5, pp. 14–15. Plaintiff specifically points to Dr. Shah's identification of the signs and symptoms of Plaintiff's impairments—*i.e.*, depressed mood, persistent or generalized anxiety, a labile and irritable affect, hostility or irritability, manic syndrome, past suicide attempt(s), difficulty thinking or concentrating, easy distractibility, flight of ideas, intrusive recollections of a traumatic experience, persistent irrational fears, anhedonia / pervasive loss of interests, decreased energy, impulsive or damaging behavior, intense and unstable interpersonal relationships, motor tension, psychomotor agitation, pressured speech, social withdrawal or isolation, and sleep disturbances—and argues that the ALJ improperly ignored this evidence. *Id.* (citing R. 436–37). In response, the Commissioner does not deny that the ALJ "did not discuss certain aspects contained on the opinion forms[,]" but argues that the ALJ "thoroughly discussed" treatment notes "and summarized the opinion evidence"; the Commissioner urges the Court to take the ALJ at his word when he said he had carefully considered "the entire record[.]"*Defendant's Brief*, ECF No. 7, PageID# 18 (citing, *inter alia*, R. 22–24).

The Commissioner's arguments are not well taken. At step four of the sequential evaluation, the ALJ discussed three of Dr. Shah's treatment notes from 2019 and 2020, R. 22–23 (citing, *inter alia*, Exhibit 5F/7–9, 55, R. 444–46, 492; Exhibit 8F/21, R. 550), and referred generally to treatment notes (including those of other providers) when discounting this physician's opinion. R. 24 (citing R. 5F, R. 438–95 (containing outpatient treatment records from George J. Otlowski Sr. Center for Mental Health Care), 8F, R. 530–61 (containing outpatient treatment records from George J. Otlowski Sr. Center for Mental Health Care), 18F, R. 656–63 (containing medical records from Padmaja Annamaneni, M.D.)). However, as detailed above,

14

Dr. Shah pointed to multiple signs and symptoms that supported her assessment of Plaintiff's abilities and limitations. R. 435–36. In discounting Dr. Shah's opinion, the ALJ neither referred to nor discussed these "supporting explanations presented by [the] medical source[s] . . . to support [her] medical opinion," as required by 20 C.F.R. §§ 404.1520c, 416.920c, which require an ALJ to explain how he considered the supportability of a medical opinion. Based on the present record, the Court cannot conclude that the ALJ properly considered the supportability factor when he evaluated and discounted Dr. Shah's opinion. *See Rodney Edward G. v. O'Malley*, 743 F. Supp. 3d 653, 663 (E.D. Pa. 2024) (remanding "for the ALJ to conduct a proper evaluation of the supportability of" opinion evidence where, *inter alia*, the ALJ "did not discuss or even mention" supporting explanations offered by medical sources to support their opinions); *Hammond v. O'Malley*, 735 F. Supp. 3d 567, 583–84 (E.D. Pa. 2024) (remanding where, *inter alia*, the ALJ's "supportability analysis also fails to make any mention of the reasons given by Dr. Desir for her opinion, despite the fact that under the regulations the ALJ must address the 'supporting explanations presented by a medical source . . . to support his or her medical opinion(s) . . . .'") (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).

Further, the Court cannot conclude that the ALJ's failure to properly consider Dr. Shah's opinion is harmless. This is particularly so where Dr. Shah opined, *inter alia*, that Plaintiff was markedly limited in his ability to maintain attention and concentration for extended periods, to sustain ordinary routine without supervision, to complete a workday without interruptions from psychological symptoms, to perform at a consistent pace without rest periods of unreasonable length or frequency and to accept instructions and respond appropriately to criticism from supervisors; and was moderately-to-markedly limited in his ability to make simple work-related decisions. R. 435. These opined limitations take on greater significance when one considers that

15

the vocational expert testified that there would be no competitive work available to an individual who, *inter alia*, was unable to make simple work-related decisions up to one-third of an 8-hour day or who was unable to accept instructions and respond appropriately to criticism from supervisors at least half of the workday. R. 65.

      This Court therefore concludes that remand of the matter for further consideration is appropriate.[6] Moreover, remand is appropriate even if, upon further examination of the medical opinion evidence and consideration of the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

---

[6] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Shah's opinion and of the RFC determination, the Court does not consider those claims. However, the Court notes that the ALJ's consideration of the opinion of Migdalis Bueno, M.S.W., Plaintiff's treating therapist (whose opinion was also co-signed by Plaintiff's treating psychiatrist, Padmaja Annamaneni, M.D.), suffers from a similar defect. R. 24, 562–66. It would be helpful on remand for the ALJ to further address the supportability of this opinion as well.

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  May 29, 2025                                    *s/Norah McCann King*
                                                              NORAH McCANN KING
                                                      UNITED STATES MAGISTRATE JUDGE